Good morning, Your Honors. May it please the Court, my name is Paulette Sarp and I represent the appellant in this matter, Interstate Fire and Casualty Company. I have requested seven minutes for rebuttal argument. Your Honors, the District Court erred in denying summary judgment to Interstate for a couple of basic reasons. The primary one is that the Court accepted the invitation of Dimensions Assurance, another insurance company, to interpret and consider the wrong contract. The District Court also, I believe, got confused about the difference between a subrogation claim and a contribution claim. What we have here is a contribution claim. My client issued a policy that covered Nurse Cryer, who was an agency worker placed at the hospital to take care of the hospital's patients while there she allegedly committed malpractice. So we insure her under a professional liability policy issued to Favorite Healthcare, a temp agency. Dimensions Assurance, another insurance company who issues policies solely to this hospital, issued a professional liability to the hospital. That policy covers what they call protected persons. The definition of protected persons includes employees. There's a couple reasons here why Nurse Cryer is an insured, a covered person under Dimensions policy. The first is that if you read the whole policy, there are several provisions in there that suggest to the contrary and, in fact, require that a person reading that contract and trying to figure out what coverage is look at the whole policy. For example, the Dimensions policy has different coverages, just like any other basic insurance policy. We have what we call general liability coverage, covers if somebody slips and falls maybe in your hospital. We have professional liability coverage for medical malpractice. And one's called coverage A, one's called coverage B. Okay? Well, this policy that Dimensions wants you to focus in on one sentence says, for example, that in the introduction page, this document is comprised of general rules and three agreements. It may also include one or more amendments. Together, these items constitute your total agreement. In addition... They say that the agreements are to be read and interpreted separately. Right. And that's one part of the policy. But when you look at the rest of the policy, it's not clear what that means because you do have to look at other sections. So if that sentence is correct, they ought to be read separately, then you lose? Well, it depends on how you interpret that sentence. If you're... No, we don't lose. They ought to be read separately. If you, if Your Honors would accept that contorted interpretation of the policy, we don't lose. The only reason that's relevant is because in one part of the policy, the Dimensions... How do you win without that? Okay. Well, the way we... Is that not your simple argument? That's one simple argument. And I think it's an obvious one. Maybe you want to make it, if it's so obvious, maybe you want to make it. Well, I'll tell you, the other argument is there's two ways that we prevail on the notion that nurse crier is covered. One is the argument that because they exclude agency workers one place and they don't for professional liability, obviously they meant to include her. Okay. But even if you don't buy that, the policy says, and we're looking just at that provision now, we cover employees. Okay. And so the court has to interpret what does employee mean? How do we do that? Well, you look to other case law, you look to definitions that are used in dictionaries. These are all things that courts look at. And there is not a single case that Dimensions cites that says that when we look at employee, we're not going to include borrowed employees. We're not going to include, you know, well, borrowed servants, borrowed employees. In fact, the case law is all to the contrary. All the case law, the interstate versus Greenspring, which is basically an identical case involving a temporary agency where the court... Let me ask you this. I know you respond to a question, but you were making a right elaborate look at section, don't look at section, you have to by inference. Isn't this the most straightforward argument? The employee one? Yes. We'll go with that one. No, no. I didn't ask you what you thought I said to go with. I asked, isn't that a more straightforward argument? Well, I think... You think not? We, they have lots of reasons why that doesn't apply too. So it's hard to say which one's more straightforward. We think either one gets you to the same. The most straightforward is the one you can explain in the fewest words. Well, then I guess that would be the employee one. That's what I thought. And that one... Is your argument, do I understand this, that she is an employee? Correct. Under the borrowed servant doctrine. Correct. And there's nothing in this case to indicate that employee means anything other than what she was. That is absolutely correct. If you're looking at the right documents. The district court pointed to allocation of risk, though. Correct. How about that? And that was an error. Because the case law in the Fourth Circuit specifically rejects that argument. Here's where the district court and dimensions go off track. We have, the only issue in this case is what does the dimensions policy say? What does the interstate policy say? And basic construction principles say, if it's unambiguous, we don't look outside the contract. Especially when the contract they want us to look at isn't even one between these two parties. Dimensions and interstate were not parties to the staffing contract. The Travelers versus Liberty case, the Fourth Circuit case, the Interstate versus Greenspring-Washington Hospital case addressed those same issues. And said, yeah, we understand that maybe the temp agency and the hospital had some agreement. And if this was a lawsuit between those two, yeah, we'd enforce that. But it isn't. How would you go about finding employees but for looking at the staffing agreement? Without looking at the staffing? But for looking at the staffing agreement. Sure. Well, the way courts look at it is the ordinary meaning. And that is what the definitions say in dictionaries. Black's Law Dictionary specifically looks to the employee definition, which says includes borrowed employees. Then you look at case law. What are other courts held? All the courts that we cite in our brief, none of which they can distinguish or give you anything to the contrary, say the normal meaning of that term includes borrowed employee. And the reason it does is because when Nurse Cryer was in the hospital, Dimensions Insurance, she was under their control. She, if she did something wrong, they're going to be vicariously liable for it to an outsider. And that's exactly what the patient did here. She sued Washington, or I'm sorry, at the wrong hospital. She sued Laurel Regional Hospital, Dimensions Insurance, and said, your nurse, along with all your other doctors and nurses, committed malpractice. And if we hadn't stepped in and insured her and covered her, they would have had to. They're liable for her conduct. And that's why employee is interpreted to include borrowed employees. She also can be a dual employee. We're not saying she wasn't our employee, too. That's not the issue. That's why we jumped in and provided coverage for her and they didn't. So, yes, I think that maybe the simplest way is to just, let's just look at the provision we're talking about. Let's look at the word employee. How do you interpret it? There is really no contrary authority. And there's no dispute that the hospital had control over her. Absolutely no dispute. And so if you look at the policy, she's an employee. She's covered. The next question is, okay, well, she's covered under Dimensions policy. She's covered under Interstate. Who pays first? That's the crux of a contribution claim. And how do you resolve that? Again, undisputed. Look towards the other insurance provisions. Ours says we're excess. If you have other insurance, then we pay last. Theirs says primary. There's no dispute about that. So we jumped in. We paid. We settled the claim against her. We defended. We spent nearly $3 million doing all of this. We stepped in. We took care of our obligation. The law says now under the principles of contribution that we have a right, an independent right. It has nothing to do with what our insurance rights are. Under the law, we have a right to go to Dimensions and say, okay, we took care of your obligation. You should have paid first. You didn't. Now you need to reimburse us. Under the staffing arrangement, is there any, I just can't put my hands on it for a second, was there any effort to designate the status of any person or just who's responsible for it? No, there was both. The staffing agreement does say that the agency workers, nurses, are employees of favored health care. And it says, and by the way, well, the indemnity agreement, which also the district court focused on, doesn't say that the staffing agency is liable for anything that happens with a nurse, only if she is solely liable. She wasn't solely negligent here. There were doctors, other people. So that even wouldn't apply. I mean, there's no way that a hospital would- I'm just asking about an attempt to change the status. It does say that. Because the law in Maryland appears to be, whatever the status, parties can allocate risk. You agree that's the law? Whatever the status. So allocation of risk does not necessarily change status. Correct? If I understand, you're saying yes. The law in Maryland says between the parties who are the employers, what we'll call the general, you can change the allocation. Isn't the law in Maryland that parties can allocate risk? Yes. But just because you can allocate risk doesn't mean you can change the status by that allocation of risk, especially as that word is to be read in an insurance contract. Exactly. Well, you pick and choose what you like out of that staffing agreement, don't you? Because in parts of your brief, you look at that agreement to deal with the issue of control. And you like that provision. So why would the provision as to employee designation provision, why shouldn't that count, too? Well, first of all, there is a case that specifically addresses this issue and points out that it's not that we like or dislike what the staffing agreement says as far as what control has. It is what it is. If they had said that the hospital has no control, well, then we probably wouldn't be here today. That provision is solely looked at, too, as one of the facts. Somewhere you have to establish what is the relationship, what is the actual relationship between the hospital and the worker. We also have testimony. We wouldn't need that provision of the hospital that supervisors there confirm, yes, she's under our control, and if we don't like what she's doing, we can fire her, which is the key factor. So we didn't need it. It's not that we like it or dislike it, but it goes to what is the relationship. You have to find the relationship somewhere. What the court says you, what label you put on it is irrelevant. You disagree with the district court's finding that she was an affiliated health care provider. Yes. Even though agreement B clearly talks about that. She does not qualify as an affiliated health care provider. Why not? Why not? There's a couple of reasons. One is the statement in the policy, and I'm about ready to go over, so the policy says we don't cover affiliated health care providers, and they're defined as people with a contract between the hospital and that person. Nurse Cryer doesn't have a contract. It says agreement, doesn't it? It says, I have it right in front of me. I believe it says a written, it says agencies. First of all, there's a problem. She's not an agency. She's an agency worker, and we know that the policy considers those differently. Providing clinical and other services on a per diem or contracted basis are not protected persons. Dimensions likes to say, well, her employer had a contract with us. Well, I would beg to differ. Just because your employer has a contract, someone who the hospital can't control, doesn't mean that an individual employee has a contract. There's no contract between Nurse Cryer and the hospital. So she doesn't qualify as an affiliated health care provider. She is an employee, by virtue of being a borrowed employee. And once that's established, the rest of the steps fall into place, because Dimensions really doesn't dispute their primary obligation. Thank you. Thank you. You've got some time reserved after Mr. Ferguson argues. Ferguson. One, Your Honors. May it please the Court. The Dimensions Reimbursement Agreement expresses a clear intent to exclude, as protected persons under the agreement, agencies that provide services on a per diem or a contract basis. That defines a class of people, a class of persons, who are excluded from protection under this reimbursement agreement. Unquestionably, Nurse Cryer fits within that class of persons. She would not be in that hospital, but for the agency agreement. Favorite Health Care does not have an office at the hospital. Favorite Health Care does not come to the hospital, but for sending its staff to the hospital. The very point is that the people that the agency sends there fulfill the agency agreement. And consequently, Nurse Cryer falls within the class of people that are excluded from coverage or protection under the reimbursement agreement. This intent is also expressed in the staffing agreement. Section 1.2 says, under no circumstances will practitioners be employees of the hospital. Again, in Section 7.0, in no event will practitioners be considered employees of the hospital. Mr. Ferguson, one of the concerns I've got is that it seems to me it's going to be right unsettling to the insurance law if the scope of their risk is going to be determined by agreements that they're not party to and may even be contrary to the terms of the policy. So what would be your answer to me to address that concern? I think I can address that. It happens frequently, Your Honor. I do a good bit of construction litigation and face coverage issues there. The AIA documents have risk-shifting provisions in them. Those contracts stipulate that certain things should be done with insurance. For example, a subcontractor may be required to name the contractor and the owner as an additional insured to the extent that the owner or the contractor become liable for work performed or claims arising out of work performed by that subcontractor. Well, you're going to have to look to that subcontractor's contract, first of all, to see if there is the additional insured provision that triggers that coverage for the owner or the contractor. You're going to have to look at that subcontract to see what the scope of work is for that subcontractor to see whether or not the claim arising out of some work is the scope of work of that subcontractor. And we get into a good number of insurance coverage disputes over that very thing. You can't look at one without the other in many of these instances. Another example is where there is a waiver of subrogation. You've got to look at that subcontract to see if the subcontractor agreed to, if the subcontractor and the contractor waived claims against each other to the extent of insurance and whether there is a provision to waive subrogation by that insurer. So you have to look at these contracts. In the case of Krasicki v. Tidewater Equipment Company, a borrowed servant case, District Judge Harvey, in a case where a longshoreman was making a claim. Now, he's not a party to the borrowed servant agreement. There was an agreement between a stevedoring firm and a crane company. And what Judge Harvey said is that an important factor to consider in evaluating the borrowed servant situation is whether there was an agreement between the parties as to where the risks should lie for the conduct of that employee. And also, he said, look, whether one or more of the parties carried liability insurance. Many of these risk shifting or risk allocation contracts, like the staffing agreement, like the AIA documents, describe a risk, allocate the risk, and determine who should insure that risk. And public policy dictates that that type of arrangement should be favored because it eliminates confusion, it eliminates both parties insuring the same risk, and it eliminates costly and inefficient litigation. Do the policies you've been describing to me refer, though, to the underlying contractual relationships between, for example, the contractor and the subcontractors? Sometimes they do. Take the additional insured situation. The policy may actually name that subcontractor in the policy or may name the owner or contractor in the policies. Other policies will not. They may have an automatic additional insured endorsement whereby if the contract says we will add the owner or contractor as an additional insured, this policy says there will be additional insureds if you contract with someone that you will name them as an additional insured. So, it happens both ways, but you have to look at the subcontract to see where you're going with this. As I mentioned, in the case of Krasicki v. Tidewater Equipment Company, Judge Harvey said that you look to the agreement between the parties. Also, in the case of Goody v. United States, that was a case where there was a medical malpractice lawsuit by a veteran. Now, he, of course, isn't party to the contract. I'm interested in this. Where do we decide this question? Do we decide what employee is, or once we decide employee, do we then look to the staffing allocation of risk to decide if that impacts then over who's responsible for that employee? My understanding of Maryland law, and it is our position, that someone is, in analyzing who is an employee, you, in the absence of a contract that allocates that employee to one or the other, or the responsibility... Could we all agree that somebody is an employee under policy A, but the parties have somehow entered an agreement as to who is going to be responsible for any liability incurred by that employee? Could you do that? You could do that. I think you can look at it both ways. I certainly agree that you could say, okay, either way, you're going to be an employee. Not either way, I'm just talking about the way we would determine it. If we were determined, but the allocation of risk, as a fact, doesn't define status of the worker. That would likely be informed or determined by what the policy and how the policy describes an employee, right? I disagree, Your Honor. I understand your point perfectly, and I'm sure Ms. Sarp would say absolutely so. But some of these agreements say... I also might get you all to agree on that, but I guess I can't. That's why we're here, I guess. But some of these agreements, and indeed ours, say this person is going to be your employee. In every case, this person will be your employee. And this agreement also provides for ensuring certain risks. Not all risks, but in circumstances where your employee... I know that, but I'm just thinking really, I guess more of a case of a third person sues. And they go, I don't care about any kind of agreement you have with them. I don't care. I know this. When I went in the hospital to get treated, that nurse who stood next to my father in the emergency room, that nurse did what gave my father the wrong medicine. And I don't care what you insurance companies say. I could care less. Looks like your employee, acts like your employee. Yes, exactly right. And so the question would be, is that your employee under an insurance policy? And you would look to that policy to see if that person was actually an employee. And then it seems to me the second tier would be looking at the question as between the two insurance companies, who's going to cover whatever is determined, but that liability and responsibility is determined under state law as to who is or is not an employee. And I'm simply saying under Maryland state law, in the absence of a contract that says otherwise, a borrowed servant is someone that is controlled by the person... A borrowed servant is your employee if you're controlling them. But that's in the absence of a contract between the parties that says otherwise. But I thought that the judge below looked at allocation of risk. And I'm just having, I think conceptually trying to figure out, I can understand allocation of risk, but I just am having some trouble understanding how that answers the first question of who is and is not an employee. Who is a borrowed servant is a legal question. And that makes you an employee. That makes you an employee. You either are or are not an employee. Right. And to make someone who is Judge Floyd's employee your employee, you'd have to go through that step-by-step analysis. And Maryland says in the absence of a contract, you go through that analysis. But if there is a contract between the parties that says it's your employee, that's what we follow. And that's what was done in the case of Goody versus United States, District Judge Bennett. And it was a medical malpractice case where obviously the patient didn't have part of the staffing agreement, wasn't a party to it. Judge Bennett looked at the staffing agreement that the Veterans Hospital, the government had with the University of Maryland Medical Center. In that case, there was malpractice allegedly occurring by a resident from the University of Maryland Medical Center supervised by a board certified physician from the University of Maryland Medical Center. But there was an agreement between the government and the University of Maryland Medical Center that stated acts of these University of Maryland residents would be governed by the Federal Tort Claims Act. And that had implications for the patient. And I'm simply underscoring the point that under Maryland law, you don't do that borrowed service analysis, which is a legal step to see if legally this is your employee. You don't do that analysis if there's a contract in place that makes that determination. And I'm also saying, as did Judge Hazel, the District Judge that decided this, that all of that is part of a risk analysis and the right of the parties to shift the risk to one party or the other and allow that party to ensure the risk of someone who is their employee. This staffing agency, under the agreement, has to qualify these nurses, has to make sure that they're certified and properly trained. Our hospital looks to them to provide qualified people. In some of the cases, I'm sure you've read, the stevedore wants to hire a crane, but that crane comes with a crane operator, a trained crane operator that knows what he's doing, knows how to operate it. We expect these nurses, when they come to our hospital under the staffing agreement, to know what they are doing, to self-direct themselves. They are given a patient and they are given orders by the physician and they have to follow those as a trained nurse. Your opposing counsel says this is a contribution case, not a subrogation case. Is it either one? I honestly don't think it matters because in order to become a contribution case, a nurse crier has to be entitled to coverage. In order to determine if she is covered, you need to look at the circumstances in which she is placed. She is in that hospital because her employer put her there. She has a right or not to get coverage from dimensions and if she does, if she has the right to then make a claim against dimensions, she has that right because she stands in the shoes of her employer. But in standing in the shoes of her employer, her employer has already This staffing agreement does not govern the insurance policy, but you can't apply the insurance policy without looking at the staffing agreement. I can say though that this step of who is an employee, is nurse an employee, only needs to be reached if you answer my first question, no. And my first question once again is this policy expresses a clear intent that protected persons are not agencies that provide services on a per diem or contractual basis and that's defining a class of people that will not be covered by this reimbursement agreement. If you say that's not enough, that's not enough, she might be a covered employee, we need to look at that analysis and I submit that in doing the analysis of who the employee is, Maryland law says that you only do the borrowed service analysis in the absence of a written agreement. When you look at the word employee and the coverage, that employee is covered, how do you determine what an employee is? Tell me what you think you look to. Don't you look to first see if there is a definition section to tell you what an employee is? And then when you look to general case law to decide what an employee is? I don't see when do you, how does a staffing agreement cover the general coverage of that employee under the insurance contract? I think that's an excellent question. No, I was just about to ask. I'm trying to figure that out. I think I've made that point in my brief, but the answer is you want to know if this person is an employee if you're moving on to the second step, having passed through my first question. Is this person an employee? So you do Maryland law that you look at a private staffing agreement? No. In some cases, maybe. First of all, if the policy does not define the term employee, then you look to other definitions or the Maryland common law. And Maryland law is that in the absence of an agreement to the contrary, you do a borrowed servant analysis. And I'm saying you don't have to do the borrowed servant analysis in this case, otherwise. And I believe the Goody case and the case by Judge Harvey, it's a tongue twister, that name. And what exactly in the contract tells you that? In the dimensions agreement? You're looking at the staffing agreement to be the contractual relationship you're talking about? Yes. Yes. What in there specifically, what specific sentence tells you that although this person looks like an employee under the policy, that person is not an employee under the staffing arrangement? Isn't that your argument? I don't think you can say that this person is an employee under the policy until you look at Maryland common law. Maryland common law says, first of all, is there an agreement to the contrary? You look at the staffing agreement. But the agreement to the contrary would have to cover that issue. Yes. But I'm asking, what do you point to? Section 1.2 of the staffing agreement, the very first page, which I believe, I think it's Joint Appendix 23, page 23. I'm there. Section 1.2, and I just about went blind last night looking at that. It's very, very bad copy. I'm looking at it right now. Under no circumstances will practitioners be employees of the hospital. You can go ahead with your argument. In sections, I think my time is up. It also appears in Section 7, in no event will practitioners be considered employees of the hospital. Your Honors, the reimbursement agreement excludes per diem contract workers. In the first instance, this nurse does. Would it be, except for this agreement, would there be an employee? If there was not an agreement, if there was not a contract, I'm saying except for this, there would be. Except for this page 23. Would she be a borrowed servant? I didn't ask you that. I said except for this staffing agreement, she would be an employee that would be covered. No, Your Honor. Why not? Because you have to look at, then you have to do the borrowed servant analysis. And there are disputes. Who is she an employee of? She's an employee of Favorite Health Care. She's paid by Favorite Health Care. She's selected by Favorite Health Care. That doesn't necessarily make her an employee of that. You have to look at the contract. I'm talking about under the contract, I ask you. You look at the contract. I'm just trying to follow through this. Is she an employee or not? You said, oh, you can't do anything until you look at the staffing agreement. That's correct. I'm saying if, just presume from my question, there is no staffing agreement, then under the law, is she an employee under that policy? Only if she satisfies the elements of the borrowed servant analysis. Then she would be. Does she? I don't think. There's a dispute of fact whether she does. Okay. Because different, the employer does, has certain responsibilities. If she satisfied the borrowed servant doctrine, she would be an employee. She would be an employee. Yes, Your Honor. In other words, under, reading the policy under the law of Maryland and borrowed servant doctrine, as I would see it, she would be an employee. Then the thing standing in the way is this staffing agreement. Because under Maryland. That is correct. Yes, Your Honor. You have to look at that first. It doesn't matter if you look at it first or not. Does it matter when you look at it in the calculation? Does it matter? Or something in this keeps her from being a borrower? It doesn't matter. Okay. You just don't have to do the borrowed servant analysis. But it doesn't matter. That's there. You get the same result no matter what order you go through as your position. That is correct, Your Honor. Thank you very much. We ask the Court affirm the trial court below. Thank you. Thank you, Mr. Ferguson. Ms. Sarp, you have some time remaining. Thank you, Your Honors. I would like to point some case law out to the panel, especially to Judge Shedd, who wanted to know about risk allocation and are these provisions between the parties in the staffing agreement where they allocate who's going to be responsible, are they relevant here? Okay? And I think Your Honor hit on it when you were talking about, well, why would that be relevant or controlling an action by a third party? Like a patient who doesn't care. I know what my hypothetical is. Right. Well, I'm going to give you some case law because I can tell you that Dimensions hasn't given you any to the contrary. I don't really. That's not helpful. Just explain under the law. Sure. Well, the law is in the White v. Bethlehem case. It's a Fourth Circuit case. The issue was there's an agreement between the two parties, general employer, special employer, about who's going to allocate risk. The court rejected that as being relevant. So that has absolutely nothing to do with this person's status and whether the temporary worker can sue or not sue one of his employers. Well, even assuming that she's an employee, if she's an affiliated health care provider, then the insurance policy suggests that she would not be protected. The policy itself. Okay. Well, and I'm glad you brought that up because there's a couple of points that need to be made there. Dimensions throughout this case has asked the court to write in provisions, to fudge a few things that they could easily have clarified and didn't. And they used their words carefully. Now they want you to not be so careful. The fact is affiliated health care providers only applies to agencies. And there is a difference between an agency, like favorite health care, and an agency worker. How do I know that? Because they say so in their policy. And for them to say, oh, you can't look at that provision about agency worker because. Why don't you do this? Instead of every time you're making a point, attacking them for the next five minutes, just walk through the language. That's probably a stronger argument. Well, the language is Dimensions wants to include agency workers in the term agencies. And you can't do that. And the policy says you can't do that. Because they actually distinguish between the two. Why don't you tell us the language in the policy? It's in the definition of who is protected person under the general liability provision. And where it says, I'm sorry. I apologize. All right. Well, it's reimbursement agreement A. And I can find the specific page when I go back there. Reimbursement agreement A talks about general liability coverage. It says what's covered, who's covered. And under the worker protection section, after it says you're present and former employees while working or while doing work within the scope of their duties, there's a specific sentence that says agency workers are not included under this section. That's the difference. They specifically say it in general liability. They leave it out of almost a virtually identical definition in professional liability. The case law, the Gates case that we cited, specifically says when an insurer articulates a limitation in one part of their policy and doesn't include it in another, that's evidence of their intent. I'm not even sure whose policy this is. This is Dimensions policy. I'm looking at. Is it page 133 and it talks about affiliated health care providers? Sure. Whose policy is that? That's Dimensions. That's their policy. But it says an affiliated health care provider means any natural person. What about that? I'm at page 133. Right, right. Right. Providing, okay, but if that's the case, they have to be providing it on a contracted basis. Nurse Cryer would be surprised to find that she has a contract with the hospital. Where do you find that? That's in the further definition that says agencies providing clinical and other services on a per diem or contracted basis are not protected persons under this agreement. So there's no doubt that agency workers don't have a contract. And here's the other thing. Even if Your Honor wanted to suggest that agency workers could be included in that definition, you have to look at the other parts of the policy. And when they specifically say refer to agency workers in general liability, they don't refer to them elsewhere. Why would they refer to agency workers in general liability and say, hey, they're not covered here if they're already excluded because they're an affiliated health care provider? You can interpret a policy to render terms superfluous, and that's what would happen there. There's no reason to specify according to them. There's no reason to say in general health care we're not going to include agency workers if the intention was that they were already read out of the policy  So you have to read it together. It's not the best, you know, most cohesive document. But the fact is you still got to read it. You have to read what together. You have to read the whole part of their policy. Wait, wait, wait. What language? What language undercuts this? This says, I'm reading this language, and it says, it says an affiliated health care provider means any natural person in the business of health care services and who or which has an agreement to provide such services in conjunctions. Didn't that sound like what this woman was doing? She had no agreement with favored health care. She was, her only contract was with favored health care. Just let me stop for a second. So she just walked in off the street as an officious intermeddler, and there was no agreement for her to work with the doctor? There was an agreement, but it wasn't between her and the hospital. It was between her other employer, and that's a significant... No, no, I'm going to suggest to you that might be the written contract was between the agency and the hospital. Correct. In other words, this woman is in there working. I think it's a woman. I'm not sure. It is. She's in there working next to the doctor, and this says she has an agreement. Does she have an agreement? She's just in there, nobody, not by agreement with the doctor or the hospital to be there. She walked in off the street, walked in the operating room. Seems to me there's an agreement. Well, I think what you've pointed out, if anything, is that there's an ambiguity in that provision because of the fact that in other places... I'm just going to say this, and I don't want to pressure you. You've got a little bit of time. To me, the way you look at contracts is you look at the language of the contract and look at that language and go, it appears to say that, but you look at language other places in the contract that says, that can't possibly be correct. And instead of saying just their reading doesn't make sense, I'm just trying to find the language. Can you make your argument based on the language in the contract in a minute on why you win? Can you do that? Point to the language. Well, first of all, we've already gone over the employee analysis, and that's completely separate. The language is, well, she's an employee. She's a protected person under professional liability coverage because she qualifies as an employee. That's all that she needs to establish. And the common law says, you know, protected workers who are borrowed employees are employees. So that's a given. That analysis is all done. What they want to do is say, well, we don't even get there because we're going to say she's not an affiliated health care provider. So my argument there is that that provision talks about individual persons or agencies who are contracted with the hospital, for one thing. And I know Your Honor is saying, well, that could be an oral contract or maybe an applied contract. My argument is, well, it doesn't say that. And if at a minimum, it's ambiguous. And if it's ambiguous, and another reason it's ambiguous is because elsewhere in the policy, which must be read together, it specifically refers to agency workers. And it points out, guess what, they're not covered here. The point is, why would you have that in there if this was clearly excluded them? So I guess the bottom line is, if it's ambiguous, that has to be construed against them and in favor of coverage for a nurse crier. Thank you, Your Honor. Thank you. Still doing okay? Yeah. Okay. We'll come down to Greek Council and then go into our last case.
judges: William B. Traxler Jr., Dennis W. Shedd, Henry F. Floyd